IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUGUSTINE R. REEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-313-RAW-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

The claimant Augustine R. Reel requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 18, 1972, and was thirty-seven years old at the time of the administrative hearing. She graduated from high school and attended three years of vocational school (Tr. 41). She has past relevant work as a billing clerk, transcriptionist, cashier, office manager, claims examiner, and a chiropractor's assistant (Tr. 59). The claimant alleges that she has been unable to work since February 12, 2006 because of ovarian cancer, nerve damage in her back, neck, shoulders, and rib cage, bulging cervical discs, migraines, and post-traumatic stress disorder (PTSD) (Tr. 155).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 19, 2009. The Commissioner denied her applications. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 13, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to carry ten pounds frequently

and occasionally, stand and/or walk for two hours in an eight hour workday, and sit for six hours during an eight hour workday (Tr. 24). The ALJ also found, however, that claimant can only occasionally stoop, crouch, crawl, kneel, balance and climb stairs (but never ladders) (Tr. 24). Further, based on psychological limitations, the ALJ concluded that the claimant would be limited to simple and some complex tasks with direct supervision and that she would be unable to work around the general public (Tr. 24). The ALJ concluded that the claimant was able to return to her past relevant work as a billing clerk and transcriptionist (Tr. 32). Thus, the ALJ concluded that the claimant was not disabled at step four (Tr. 32).

## Review

The claimant contends that the ALJ erred: i) by failing to properly assess the claimant's RFC because he failed to account for the effect of claimant's migraines on her ability to work; ii) by finding that claimant could perform her past relevant work at step four; iii) by failing to properly analyze the treating physician opinion of Dr. Nance Weddle; and iii) by failing to properly analyze claimant's credibility. The undersigned agrees with the claimant's second contention.

The claimant received inpatient treatment at Muskogee Regional Medical Center from July 31-August 3, 2006 with complaints of nausea, vomiting, low grade fever, and intractable abdominal pain (Tr. 243). After undergoing upper GI endoscopy, the claimant was diagnosed with gastritis and mild distal esophagitis (Tr. 244). She also presented with migraine headaches (Tr. 251, 258, 264, 309) and chest pain (Tr. 282, 292, 298) on

numerous occasions. Dr. R. Kern Jackson, M.D. evaluated the claimant on May 22, 2007, and noted that following a car accident, the claimant has had complaints of "chronic and increasing pain in the right posterior lateral chest" (Tr. 334). Dr. Jackson also noted the claimant's long history of migraine headaches, which were accompanied by nausea and vomiting (Tr. 334). The diagnosis at that time was chronic pain syndrome subsequent to her motor vehicle accident, uncontrolled migraine headaches, episodic nausea and vomiting perhaps related to chronic pain syndrome, status post-op cholecystectomy, and history of cervical disk disease (Tr. 336). On July 19, 2009, the claimant was hospitalized overnight at McAlester Regional Health Center due to shortness of breath that was accompanied by numbness and tingling in her left arm (Tr. 490). She was assessed with non-cardiac chest pain that was either secondary to a "hypertensive crisis" or a severe anxiety attack (Tr. 491). On July 28, 2009, however, Dr. Asim Chohan, M.D. conducted an exercise treadmill test and determined that claimant had moderate to large anterior wall perfusion defect with reversibility and an abnormal left ventricular ejection fraction of 26% (Tr. 500). As a result, Dr. Chohan recommended claimant undergo left heart catheterization which was performed on August 25, 2009 (Tr. 500, 604). That procedure revealed that while the claimant's chest pain was noncardiac, she had cardiomyopathy with decreased left ventricular function as evidenced by a left ventricular ejection fraction of 40% with global hypokinesis (Tr. 604).

The claimant had a series of physicians write letters stating she was unable to work. The first note subsequent to the alleged disability onset date, dated April 29, 2008, was submitted by Dr. Gerald Rana and stated, simply, that claimant was "not able to work [due] to illness" (Tr. 323). One of claimant's physicians, Dr. Nancé Weddle, D.O., wrote a letter dated October 30, 2008, in which she stated that claimant was "temporarily unable to work due to medical conditions" (Tr. 320). Next, Dr. Stephen J. Riddle, M.D. submitted a letter dated February 9, 2009 stating that claimant was "unable to work at this time due to recent surgery" (Tr. 326). Finally, Dr. Weddle submitted yet another note dated July 17, 2009 in which she wrote that claimant "has multiple medical problems and is currently undergoing further evaluation. She is not able to work at this time" (Tr. 388).

The claimant was psychologically evaluated by state examining physician Dr. Kathleen Ward, Ph.D. on July 28, 2009 (Tr. 493). The claimant recounted a head-on motor vehicle accident which resulted in cervical disc herniation, brain swelling, punctured lungs, and broken/shattered ribs (Tr. 493). She reported anger issues but denied depression and stated that because she was no longer "the little money machine" her family had become "extremely hateful" towards her (Tr. 493). The claimant also described a troubled childhood, including physical abuse in which she was "singled out for beating among her brother and sister" (Tr. 494). The claimant described her mood as anxious and Dr. Ward noted "some deficits in social judgment and problem solving" (Tr. 495). The diagnosis was acute stress disorder secondary to her motor vehicle accident by history and personality disorder, NOS (Tr. 496).

State reviewing physician Dr. Diane Hyde, Ph.D. completed a Psychiatric Review Technique and found that the claimant had mild limitations in her activities of daily living and moderate limitations in both maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 634). Dr. Hyde also completed a Mental Residual Functional Capacity Assessment and found that claimant was markedly limited in the ability to interact appropriately with the general public and moderately limited in the following categories: i) ability to understand and remember detailed instructions; ii) ability to understand and remember very short and simple instructions; iii) ability to work in coordination with or proximity to others without being distracted by them; iv) ability to accept instructions and respond appropriately to criticism from supervisors; and v) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 638-39).

The claimant was physically evaluated by state examining physician Dr. Mohammed Quadeer on September 30, 2009 (Tr. 657-665). Dr. Quadeer wrote that claimant reported quitting work in 2006 because the doctor told her not to work and that she had PTSD as a result of physical abuse as a child and adult (Tr. 657). Upon examination, Dr. Quadeer noted that claimant had a decreased range of motion in her lumbar spine with muscle spasms and limited movements of the cervical region (Tr. 659). Further, while her gait was "safe and stable with appropriate speed," her heel- and toe-walking was weak (Tr. 659).

On November 10, 2009, state reviewing physician Dr. Brian Boggs, M.D. completed a Physical Residual Functional Capacity Assessment in which he opined that claimant could occasionally lift ten pounds, frequently lift less than ten pounds, stand/walk for at least two hours in an eight-hour workday, and sit for six hours in an eight hour workday (Tr. 667). Dr. Boggs found no other physical limitations.

A Psychiatric Review Technique was completed by state reviewing physician Dr. Carolyn Goodrich, Ph.D. on January 20, 2010 (Tr. 703-19). Dr. Goodrich concluded that claimant's mental impairments consisted of anxiety-related disorders and personality disorders, characterized by recurrent and intrusive recollections of a traumatic experience causing marked distress, acute stress disorder secondary to a motor vehicle accident and PTSD. Dr. Goodrich then completed a Mental Residual Functional Capacity Assessment in which she opined that claimant was moderately limited in her ability to understand and remember detailed instructions and ability to carry out detailed instructions (Tr. 717). Dr. Goodrich also opined that claimant was markedly limited in her ability to interact appropriately with the general public (Tr. 718). Dr. Goodrich's written notes state the following:

> [T]he claimant is able to perform simple and some complex tasks with direct supervision. [Claimant] is able to concentrate and persist for a normal workday and work-week. As [claimant] evidences some problems in social judgment, she would need direct supervision and no public contact. [Claimant] is able to adapt to changes in a familiar setting.

(Tr. 719).

The claimant argues that the ALJ failed to resolve conflicting findings at steps two and four regarding claimant's ability to maintain concentration, persistence, and pace and failed to clarify the "complex tasks" claimant was capable of performing when posing the hypothetical questions to the VE during the administrative hearing. The undersigned agrees.

First, at step two, the ALJ found that the claimant had moderate limitations related to maintaining concentration, persistence, and pace at step two but found that claimant did not have any resulting limitations resulting from this deficiency. The ALJ, however, failed to explain how or why his finding that the claimant had moderate limitations in concentration, persistence or pace did not result in any consequences related to his RFC assessment. This is error.

The ALJ relied on the opinions of the state reviewing physicians in his assessment of claimant's mental RFC. Both of those opinions note that the claimant has moderate limitations in her ability to understand, remember, and carry out detailed instructions (Tr. 638, 719). Yet, the ALJ failed to discuss why he was *not* including those limitations in his RFC findings. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply

unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

The omission of a discussion regarding claimant's ability to understand, remember, and carry out detailed instructions is especially important in this case, where the ALJ found that the claimant was capable of performing "simple and some complex tasks" and that the claimant was capable of performing work that requires a reasoning level of three. First, "[h]ypothetical questions [posed to the vocational expert] should be crafted carefully to reflect a claimant's RFC, as '[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'" *Wiederholt v. Barnhart*, 121 Fed. Appx. 833, 839 (10th Cir. 2005) [unpublished decision], *quoting Hargis v. Sullivan*, 945 F.2d 1483, 1492 (10th Cir. 1991) (quotation omitted). The use of the term "some complex tasks" is too broad and unspecific to adequately incorporate the ALJ's more specific finding that claimant had moderate restrictions in her ability to maintain concentration, persistence, and pace and encompass the state physicians' findings that the claimant was limited in her ability to understand, remember, and carry out detailed instructions. *See, e.g.*, *Wiederholt*, 121 Fed. Appx. at 839 ("The relatively broad, unspecified nature of the description 'simple' and 'unskilled' does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ omitted, without explanation, impairments that he

found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed.")

Further, the Dictionary of Occupational Titles (DOT) states that a reasoning level of three is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT §§ 214.482-010, 203.582-058. By contrast, a reasoning level of two requires "commonsense understanding to carry out *detailed but uninvolved* written or oral instructions" DICOT, Appendix C. Given the DOT's progression with respect to reasoning levels, it follows that a reasoning level of three would require the ability to understand and carry out detailed instructions on at least some level. Therefore, the extent, if any, of claimant's limitations regarding her ability to understand, remember, and carry out detailed instructions is an important aspect in determining whether she has the mental RFC to perform her past relevant work as a billing clerk and transcriptionist, and *any* limitation in that regard should have been presented to the vocational expert.

Because the ALJ failed to explain inconsistencies within his opinion regarding the claimant's mental impairments, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma